LAW OFFICE OF

# JUSTIN A. ZELLER, P.C.

JUSTIN A. ZELLER
JAZELLER@ZELLERLEGAL.COM

BRANDON D. SHERR
BSHERR@ZELLERLEGAL.COM

TELEPHONE: 212.229.2249
FACSIMILE: 212.229.2246

February 21, 2022

**VIA ECF**

Hon. Debra C. Freeman, United States Magistrate Judge
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse

Re: *Rodriguez Alvarado et al v. 58 West LLC et al*, 19 CV 7694 (DCF)

Dear Judge Freeman:

Plaintiffs Cornelio Gonzalez ("Gonzalez"), Jose E. Hernandez Hernandez ("Hernandez"), Bladimir Lenin Moreno ("Moreno"), Nabor Reyes Mejia ("Mejia") (collectively, "Party Plaintiffs") and Carlos Rodriguez Alvarado ("Rodriguez Alvarado") (together with Party Plaintiffs, "Plaintiffs"), with Defendants' consent, hereby move for the Court's approval of the attached settlement agreement as fair to the Plaintiffs and dismissal of this action with prejudice.

This case is against former alleged employers. Alvarado and Party Plaintiffs allege they worked for Defendant Maria Loi at a restaurant called Loi Restaurant that has since closed. Alvarado alleges he then worked for all Defendants at a later restaurant called Loi Estiatorio.

The Defendants maintain that Maria Loi is not an employer pursuant to applicable law, and Alex Antimisiaris did not employ Gonzalez, Hernandez, Moreno, or Mejia.

The parties have agreed to settle this action in the amount of $62,615.30. Of this amount, Mr. Rodriguez Alvarado will receive $30,000.00, this law firm will receive $22,615.30 as fees and costs, and the Party Plaintiffs will receive $2,500.00 each.

The first installment is due thirty days after the settlement agreement is signed by the Plaintiffs and each subsequent payment is due thirty days before the prior payment for a total of 18 payments, and the Defendants' attorneys will hold any accrued payments in escrow until the settlement agreement is approved by the Court and the case is dismissed. The corporate defendant, 58 West LLC d/b/a Loi Estiatorio has settled this case on behalf of all Defendants, and a Confidential Consent Judgment has been executed as a guarantee that payments will be made. The Consent Judgment also includes that its signatories will be bound by the terms of the agreement and Consent Judgment in the event the Defendants default on the agreement.

The Parties have agreed to this Court's jurisdiction to enforce the agreement and Confidential Consent Judgment. If the defendants fail to make payments under the agreement, the parties will submit the Confidential Consent Judgment to the Court for the Court to enter judgment based on the terms of the Consent Judgment. Material to the Plaintiffs' agreement to settle this action with the above-referenced payment plan is that this Court will retain jurisdiction to enforce

the terms of the agreement, including entering the Confidential Consent Judgment against all signatories.

This action arises under the Fair Labor Standards Act, the Minimum Wage Act, and the Wage Theft Prevention Act. Plaintiffs allege that Defendants violated the wage and hour laws and that the Defendants owe Plaintiffs back wages and liquidated and statutory damages. All Plaintiffs allege they worked at Loi Restaurant (the earlier, closed restaurant where Maria Loi also worked), and Plaintiff Rodriguez Alvarado alleges he worked at Loi Estiatorio where he alleges all Defendants employed him.

Mr. Rodriguez Alvarado alleges he is owed $5,041.93 in minimum wages for Defendants' failure to pay him any wages in his final 7 weeks, owed an additional $939.64 in contract pay for that time period, is owed $174,673.56 for overtime due to being paid a salary, $9,783.86 in spread-of-hours wages, and an additional $10,000.00 in statutory damages for Defendants' failure to provide a notice and acknowledgment at the time of hiring and failure to furnish a wage statement each week in violation of the Wage Theft Prevention Act. Mr. Rodriguez Alvarado is also owed liquidated damages. Mr. Rodriguez Alvarado alleges he worked as a cook from August 2013 until August 2017.

Mr. Gonzalez alleged he worked as a cook from September 2010 until February 2014 and is owed $47,379.05 in overtime wages and $2,500.00 in statutory damages for failure to provide a wage statement.

Mr. Hernandez-Hernandez alleges he worked as a cook from August 2011 until July 2012 and is owed $7,500.00 in unpaid overtime wages and $5,000.00 in statutory damages for failure to provide weekly wage statements and a notice and acknowledgment at the time of hiring.

Mr. Lenin Moreno alleges he worked as a cook from May 2012 until March 2013 and is owed $6,600.00 in unpaid overtime wages, and $4,700.00 in statutory damages for failure to provide weekly wage statements and a notice and acknowledgment at the time of hiring.

Mr. Reyes Mejia alleges he worked as a cook from June 1010 until August 2012 and is owed $33,107.13 in unpaid overtime wages and $2,500.00 in statutory damages for defendants' failure to provide weekly wage statements.

This case settled after the close of fact discovery during arms-length negotiations between the Parties' counsel. The Parties attended a mediation but failed to settle at the outset of litigation. During discovery, Defendants produced voluminous records, and all Parties were deposed in addition to a number of non-parties.

The Defendants have several credible defenses.

First, Defendants claim that the defendant Maria Loi never acted as an employer subject to individual liability. To determine if an individual is an employer, Courts in this district rely on the "economic realities" test. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (S.D.N.Y. 2013). Defendants provided documentation and testimony that showed that Maria Loi was hired as a consultant who provided her name and likeness as well as marketing skills to promote the likeness in her role as a "celebrity chef." Defendants provided documents which showed that Maria Loi was paid a salary

as an employee and had no ownership stake in Defendants' restaurant. Therefore, Defendants were contemplating a motion for summary judgment on this issue before the case settled.

Second, Defendants have asserted that Mr. Rodriguez Alvarado is an exempt executive and exempt professional, and plaintiffs intend to win summary judgment that these defenses are inapplicable. If Defendants can establish that Mr. Rodriguez Alvarado meets these exemptions, then he is not owed minimum wage and overtime. These exemptions are described in Section 13(a)(1) of the FLSA and clarified in 29 C.F.R. § 541. Defendants provided extensive testimony and documentation demonstrating Mr. Rodriguez Alvarado was a skilled pastry chef with a degree that may indicate he met the professional exemption. Defendants also provided information to show that Mr. Rodriguez Alvarado would tell employees in the kitchen what to do and, therefore, was an exempt executive. These defenses also pose risk to Plaintiffs.

Third, Defendants have a credible argument that equitable tolling should not apply. Mr. Rodriguez Alvarado began this case on August 16, 2019, as the named plaintiff. Later, the remaining Plaintiffs asserted FLSA claims (which has a 3-year statute of limitations at best) by filing consents to become party plaintiffs, and asserted Minimum Wage Act claims (which have a 6 year statute of limitations) by the filing of the amended complaint on September 30, 2020. Therefore, all Plaintiffs, except for Mr. Rodriguez Alvarado, have entirely time-barred claims, unless equitable tolling applies, which is why Mr. Rodriguez Alvarado is receiving the lion's share of the settlement amount. Equitable tolling is "an extraordinary remedy" that should be "used only sparingly." *See Upadhyay v. Sethi*, No. 10-CV-8462 (NRB), 2012 U.S. Dist. LEXIS 107084 at *1 (S.D.N.Y. July 31, 2012). Where a plaintiff seeks to avail himself of equitable tolling, "the burden of proving that tolling is appropriate rests on the plaintiff." *Chapman v. Choicecare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002). To determine whether equitable tolling is merited in a particular case, courts consider two factors. First, courts look at whether "a plaintiff . . . acted with reasonable diligence during the time period she seeks to have tolled." *Id.* at 512; *see also* Upadhyay, 2012 U.S. Dist. LEXIS 107084, 2012 WL 3100601, at *1. Second, courts consider whether "the defendants or some 'extraordinary circumstances' prevented the plaintiff from bringing suit." *Upadhyay*, 2012 U.S. Dist. LEXIS 107084 at *1. *See also Trans Union LLC v. Lindor*, 393 F. App'x 786, 788-89 (2d Cir. 2010) (quoting *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005)). Defendants have credible evidence that they posted proper notice of Plaintiffs' rights, and Defendants maintain that all Plaintiffs testified they were aware of their rights, so Plaintiffs would need to establish that equitable tolling does not apply for other reasons.

Fourth, Defendants largely dispute that Mr. Rodriguez Alvarado worked the number of hours he claims he worked. In addition, because Defendants claim that Maria Loi was not an individual employer, the Defendants claim that no defendant ever actually employed the Party Plaintiffs.

Fifth, the Defendants dispute the timing of Plaintiffs' allegations. Loi Restaurant opened in October of 2011. Defendants maintain that Maria Loi was not an employer and did not own Loi Restaurant. Defendants have explained that 58 West and Alex Antimisiaris were not involved with Loi Restaurant at all. Therefore, there is no way any of the Defendants could be held liable for the alleged owed wages before October 2011 because Plaintiffs could not have been working for Defendants. For the time between November 2011 (when Maria Loi arrived at Loi Restaurant) and the date when Loi Restaurant closed in July of 2014, Maria Loi was working in a marketing

capacity, so according to Defendants, none of the Plaintiffs can assert claims against *these* Defendants during that time period either. Defendants maintain any such claims should have been asserted against the owners of Loi Restaurant (Cosmic Group).

Sixth, and importantly, Defendants claim an inability to pay and shared financial information to justify their position. This inability to pay also justifies the long payout in this case.

In sum, a *bona fide* dispute exists with respect to wages owed, hours worked, whether Maria Loi acted as an employer, whether the professional or executive exemptions apply, whether equitable tolling applies, whether Plaintiffs could prove entitlement to liquidated damages, and the Defendants' inability to pay. On the eve of summary judgment motion practice, the parties settled and agreed that considering this *bona fide* dispute about the extent of damages, and the Defendants' inability to pay, settlement would bring both sides certainty and a quick resolution, and so settlement would be in the best interests of both parties.

Employees cannot waive or settle claims under the Fair Labor Standards Act for unpaid minimum wages or overtime, except by settlements supervised by the Department of Labor or judicially-approved settlements of a civil action. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203-06 (2d Cir. 2015).

Plaintiffs and Defendants represent to the Court that the settlement agreement is fair to Plaintiffs, reasonably resolves *bona fide* disagreements between Plaintiffs and Defendants about the merits of Plaintiffs' claims; and demonstrates a good faith intention by Plaintiffs and Defendants that their claims for liability and damages in this action be fully and finally resolved and not re-litigated in the future.

In *Cheeks*, the Second Circuit did not reach the issue of whether the settlement in that case was worthy of approval. *See id.* at 203 n.3. Here, the parties believe that the settlement agreement is fair and reasonable because: (1) the Plaintiffs are collecting a substantial sum from a small restaurant who has credible defenses; and (2) the settlement agreement satisfies all the factors set forth in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2015).

The first *Wolinsky* factor examines "the plaintiff's range of possible recovery." *Id.*

Plaintiffs' potential recovery is outlined above. Given the risks of this case, including the Defendants' records, Plaintiffs' allegations regarding hours worked and pay received and the dubious entitlement to liquidated damages, and the uncertainty of collecting a large judgment, the settlement amount of $62,615.30 is justified.

The second *Wolinsky* factor examines "the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses.'" *Id.* This agreement was reached on the eve of trial. Therefore, the settlement will cause the parties to avoid the expense and burdens of summary judgment motion practice and trial and the settlement will provide Plaintiffs with a prompt payment, as opposed to an uncertain outcome perhaps years in the future if the case is litigated further and potentially appealed. Settling the Plaintiffs' claims at this point will avoid continuing litigation costs for all parties. Had this action not settled, the parties would have moved forward with summary judgment motions, trial preparation, trial, and possibly appeals.

The third *Wolinsky* factor examines "the seriousness of the litigation risks faced by the parties." *Id.* All parties face the inherent risks and expenses imposed by proceeding to a potential trial and post-judgment collection proceedings. Plaintiffs face the additional risk of recovery. The Defendants operate a small restaurant (Defendants only concede that Maria Loi's role is as a public relations employee) that has suffered greatly during the pandemic. Given the Defendants' financial condition, Plaintiffs feel that collecting a judgment is by no means a certainty and strongly prefer the certainty provided by a settlement amount that the Defendants can pay. The Defendants also have testimony that shows that Plaintiffs worked fewer hours than they are claiming. Further, the Defendants have many credible defenses that would establish they are not liable for any damages claimed by Plaintiffs. Thus, Plaintiffs face serious litigation risks in pursuing the case further.

The fourth *Wolinsky* factor examines "whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel.'" *Id.* This agreement was reached by arms-length negotiation by experienced employment attorneys, as both Plaintiffs' counsel and Defense counsel routinely handle employment cases, including those brought under the FLSA. The Plaintiffs are represented in this action by the Law Office of Justin A. Zeller, P.C., a law firm specializing in representing employees in wage and hour litigation. Plaintiffs' counsel has represented plaintiffs in over 300 actions for such claims in the Southern District of New York alone, and many others in the Eastern District of New York and the District of New Jersey, and in the courts of the State of New York. Defendants' counsel in this case has successfully represented corporations and individual defendants in a multitude of matters in federal and state court, including actions arising under the FLSA.

The fifth *Wolinsky* factor examines "possibility of fraud or collusion." *Id.* There is no evidence of any fraud or collusion in this case between the parties to circumvent the wage and hour laws. The agreement arose via settlement negotiations with opposing counsel. Indeed, this case was diligently litigated, and the settlement was reached through arms-length negotiation.

Lastly, the Court must consider evidence of any factors weighing against approval. There are none.

The settlement agreement also resolves the Plaintiffs' attorney's fees and costs. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, the Minimum Wage Act, N.Y. Lab. Law § 650, *et seq.*, Section 191 of the New York Labor Law, and the Wage Theft Prevention Act, 2010 N.Y. Laws 564. These laws, in combination, provide to a prevailing party in a civil action an award of attorney's fees and costs. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1)–(2), 663(1); *see also Gurung v. Malhotra*, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012). This award is mandatory. *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008).

Plaintiffs are represented in this action by the Law Office of Justin A. Zeller, P.C., a law firm specializing in wage and hour litigation and incorporated in 2005. The sole shareholder of the law firm is Justin A. Zeller, an attorney who graduated law school in 2002 and has specialized in wage and hour law since 2005. Associated with the law firm is John M. Gurrieri who graduated law school in 2013 and was associated with the law firm from February 2014 until July 2017 and again since July 2019. Also associated with this firm is Brandon D. Sherr, who graduated law school in 2010, who has since been associated with this law firm and has specialized in wage and hour law.

The amount of attorney's fees to which a party is entitled may be based on the presumptively reasonable fee, sometimes called the lodestar. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183, 189–90 (2d Cir. 2008). The presumptively reasonable fee is the product of the reasonable hours in the case and the reasonable hourly rate. *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

The reasonable hourly rate is determined by whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). However, the Court may adjust the hourly rate to account for other case-specific variables, *Arbor Hill*, 522 F.3d at 184, including the factors set forth in *Johnson v. Georgia Highway Express, Inc.*:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved or the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability of the case;' (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson*, 488 F.2d 714, 717–19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989); see also *Arbor Hill*, 522 F.3d at 186 n.3 (citing the *Johnson* factors). But the Court need not make separate findings as to all twelve *Johnson* factors. *Lochren v. Cnty. of Suffolk*, 344 Fed. App'x 706, 709 (2d Cir. 2009).

Reasonable hourly rates awarded in similar cases range from $200 to $600 per hour for similar small firms. *See Rosendo v. Everbrighten Inc.*, No. 13 CV 7256, 2015 U.S. Dist. LEXIS 50323, at *23–24 (S.D.N.Y. Apr. 7, 2015) (finding rates for three attorneys from a small firm specializing in wage and hour litigation over five other cases to be from $200 to $425 and awarding between $225 and $400); *Guallpa v. NY Pro Signs Inc.*, No. 11 CV 3133, 2014 U.S. Dist. LEXIS 77033, at *28–30 (S.D.N.Y. May 27, 2014), *adopted by* 2014 U.S. Dist. LEXIS 116671 (S.D.N.Y. Aug. 18, 2014) (finding rates for three attorneys from one small firm over three other wage and hour cases to be from $350 to $600 and awarding within the same range in wage and hour case).

Mr. Zeller's reasonable hourly rate has been considered and he was found to be entitled to a rate of $400 per hour in 2021; $350 per hour in 2019; 2018, 2017, and 2015, and $300 per hour in 2011. *See Moreno-Baez v. Snack Company LLC*, No. 14 CV 6914 (ER), slip op. (S.D.N.Y. Dec. 13, 2021); *De La Cruz Moreno v. Happy Angel Nail Spa Inc.*, No. 15 CV 10078 (LGS) (GWG); 2019 U.S. Dist. LEXIS 98622, *30, (S.D.N.Y. Jun. 12, 2019); *Dominguez v. 322 Rest. Corp.*, No. 14 CV 3643 (RA), 2019 U.S. Dist. LEXIS 78496, *5, (S.D.N.Y. May 9, 2019); *Alvarez v. Nu Bella Nail & Spa I, Inc.*, No. 16 CV 5721, slip op. (E.D.N.Y. June 14, 2018), *adopted by* slip op. (E.D.N.Y. July 11, 2018); *Galicia v. 63-68 Diner Corp.*, No. 13 CV 3689, 2015 U.S. Dist. LEXIS 191532, at *6 (E.D.N.Y. Aug. 13, 2015); *Rodriguez v. Queens Convenience Deli Corp.*, No. 09 CV 1089, 2011 U.S. Dist. LEXIS 120478, at *16 (E.D.N.Y. Oct. 18, 2011).

Mr. Sherr's reasonable hourly rate has been considered, and he was found to be entitled to rates of $300 in 2021; $300 in 2020; $300 per hour in 2019; $300 per hour in 2019; $300 per hour in 2019; $275 per hour in 2018, $300 and $275 per hour in 2017, and $225 and $300 per hour in 2015. *See Moreno-Baez v. Snack Company LLC*, No. 14 CV 6914 (ER), slip op. (S.D.N.Y. Dec. 13, 2021); *Villalva Estrada v. Giovanni's Italian Eatery, Inc.,* 2020 U.S. Dist. LEXIS 151715, *11, 16 CV 6162, (S.D.N.Y. Aug. 20, 2020); *De La Cruz Moreno v. Happy Angel Nail Spa Inc.*, 2019 U.S. Dist. LEXIS 98622, *30, No. 15 CV 10078 (LGS) (GWG) (S.D.N.Y. Jun. 12, 2019); *Dominguez v. 322 Rest. Corp.*, No. 14 CV 3643 (RA), 2019 U.S. Dist. LEXIS 78496, *5, (S.D.N.Y. May 9, 2019); *Kotuwage v. NSS Petroleum Inc.*, No. 15 CV 4374 (FB) (ST), 2019 U.S. Dist. LEXIS 37053, at *5 (E.D.N.Y. Mar. 6, 2019); *Alvarez v. Nu Bella Nail & Spa I, Inc.*, No. 16 CV 5721, slip op. (E.D.N.Y. June 14, 2018); *Gonzalez-Diaz v. Daddyo's Mgmt. Grp. Inc.*, No. 16 CV 1907, 2017 U.S. Dist. LEXIS 185397, at *14 (E.D.N.Y. Nov. 7, 2017), *adopted by* 2017 U.S. Dist. LEXIS 205344 (E.D.N.Y. Dec. 12, 2017); *Duran v. Superior Cooling LLC*, No. 15 CV 7243, 2017 U.S. Dist. LEXIS 82249, at *20 (E.D.N.Y. May 10, 2017); *Patterson v. Copia NYC LLC*, No. 15 CV 2327, 2015 U.S. Dist. LEXIS 189029, at *18 (S.D.N.Y. Dec. 29, 2015); *Galicia v. 63-68 Diner Corp.*, 13 CV 3689, 2015 U.S. Dist. LEXIS 191532, at *6 (E.D.N.Y. Mar. 30, 2015).

Mr. Gurrieri's reasonable hourly rate has been considered and he was found to be entitled to a rate of $300 in 2021; $225 in 2020; $200 and $250 in 2019; $225 in 2018, $250 and $225 per hour in 2017; and $250 per hour in 2015. *See Snack Company LLC*, slip op. at *4; *Giovanni's,* slip op. at *11; *Happy Angel Nail Spa,* 2019 U.S. Dist. LEXIS at *30; *322 Rest. Corp.*, 2019 U.S. Dist. LEXIS at *5; *Alvarez*, slip op.; *Gonzalez-Diaz*, 2017 U.S. Dist. LEXIS 185397, at *14; *Duran*, 2017 U.S. Dist. LEXIS 82249, at *20; *Patterson,* slip op. at 15–16.

Mr. Levy also billed hours in this action, but his hourly rate has never been considered by a Court. He was a law school graduate at the time he billed hours in this action.

The Plaintiffs would have requested that the Court find a reasonable hourly rate of $400 for Mr. Zeller; $350 for Mr. Sherr, and $300 for Mr. Gurrieri. These rates are within the range previously found reasonable for this nature of action in this forum and account for increased experience by each of these litigators since the Courts mentioned above considered their hourly rates. The Plaintiffs would have requested hourly rates of $150 for Mr. Levy.

To determine the reasonableness of the hours, a party seeking an award of attorney's fees must submit contemporaneous time records indicating the hours and the nature of the work done. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986); *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); *Puglisi v. Underhill Park Taxpayer Ass'n*, 964 F. Supp. 811, 817 (S.D.N.Y. 1997).

Plaintiffs include herewith on behalf of the Law Office of Justin A. Zeller, P.C., the contemporaneous time records of the Plaintiff's counsel, which shows 282.1 total hours spent in this case. The included description with each entry corresponds to the descriptions in the American Bar Association's Uniform Task-Based Management System, a broadly recognized system of documenting hours. Courts even recommend its use for motions for attorney's fees. *See Albion Pac. Prop. Res., LLC v. Seligman*, 329 F. Supp. 2d 1163, 1174 (N.D. Cal. 2004); *Yahoo!, Inc. v. Net Games, Inc.*, 329 F. Supp. 2d 1179, 1189 (N.D. Cal. 2004) ("Although the court considers plaintiff's data in the manner presented, the American Bar Association's "Litigation Code Set" provides a

more uniform methodology for categorizing requested hours. *See* American Bar Association ("ABA"), Uniform Task-Based Management System Information, *available at* [http://www.americanbar.org/groups/litigation/resources/uniform_task_based_management_system.html]. The ABA template commends itself to parties applying for fee awards."). Similar productions by the plaintiff's counsel of such contemporaneous time records have been found by the Court to be "complete." *Palacios v. Z & G Distribs., Inc.*, No. 11 CV 2538, 2013 U.S. Dist. LEXIS 112676, at **18–19 (S.D.N.Y. Aug. 6, 2013).

Mr. Zeller worked approximately .3 hours in this action, Mr. Sherr worked approximately 1.4 hours in this action, Mr. Gurrieri worked approximately 109.1, Mr. Levy worked approximately 4.4 hours in this action. The 115.2 total hours sought are reasonable, appropriately delegated among the involved attorneys requisite to their experience, and necessary to the litigation of this action. The total attorney's fees in this action therefore are $34,000.00.

Additionally, the Plaintiffs' costs total $2,615.30 and consist of the $400.00 filing fee, and postage, case records, court reporting services, and service of process. These expenses were prepaid by the Plaintiffs' counsel. The Plaintiffs include an enumeration of these costs herewith.

Therefore, the total fees and costs sum to a total lodestar of $36,615.30 which is higher than the fee allocation under the settlement agreement. Because the lodestar is greater than the total attorney's fees and costs awarded under the settlement agreement, the proposed allocation of is reasonable.

The total amount apportioned as attorney's fees is fair and reasonable, as well, because it is one-third of the total settlement plus costs. Courts in this Circuit regularly approve fees of one-third plus costs. *See, e.g.*, *Lazo v. Kim's Nails at York Ave., Inc.*, No. 17 Civ. 3302 (AJN), 2019 WL 95638, at *2 (S.D.N.Y. Jan. 2, 2019); *Rojas et al. v. Bronx Moon LLC*, No. 17-CV-5825 (KMK), 2018 WL 4931540, at *4 (S.D.N.Y. Oct. 10, 2018) (finding attorneys' fees representing one-third of the settlement amount plus costs reasonable); *Marquez v. Roberto's Rest. Corp.*, No. 16 Civ. 2304 (HBP), 2017 WL 5468760, at *3 (S.D.N.Y. November 13, 2017) ("Contingency fees of one-third in FLSA cases are routinely approved in this Circuit."); *Gutierrez v. Highridge Bagels, Inc.*, No. 17 Civ. 1451 (VLB), 2017 U.S. Dist. LEXIS 90984, at *2 (S.D.N.Y. June 12, 2017) ("[T]he Court finds the attorneys' fees, which are one-third of the recovered amount plus costs, to be fair and reasonable[.]"); *Redzepagic v. Hammer*, No. 14 Civ. 9808 (ER), 2017 WL 1951865, at *2 (S.D.N.Y. May 8, 2017) ("One-third contingency fees ... are commonly accepted in the Second Circuit in FLSA cases.").

In addition, the proposed allocation was negotiated and agreed to between the Plaintiffs and the Plaintiffs' counsel. *See In re Lawrence*, 24 N.Y.3d 320, 339 (2014). Nothing additional is to be paid by the Plaintiffs to the Plaintiffs' counsel. The proposed allocation was negotiated and agreed to between the Plaintiffs and the Plaintiffs' counsel.

Further, the lodestar exceeds the amount of attorney's fees. Even if the Court were to reduce the hours and proposed hourly rates of the attorneys a lodestar multiplier would be appropriate and likely justify the fees. *See Weston v. TechSol, LLC*, 2018 U.S. Dist. LEXIS 166574, *24 (E.D.N.Y. 2018) (citing *Monserrate v. Tequipment, Inc.*, No. 11 CV 6090, 2012 U.S. Dist. LEXIS 164265, 2012 WL 5830557, at *3 (E.D.N.Y. Nov. 16, 2012) ("Courts regularly award multipliers from two to six

times the lodestar."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 CV 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (awarding attorneys' fees to be paid out of a settlement fund resulting in a positive lodestar multiplier of 2.09 and noting that this "is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (finding that "fees of $283,333 and a lodestar of $127,000, the resulting 'lodestar multiplier' of 2.2 is well within the range of acceptable"); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (concluding that a lodestar multiplier of 4.65 is "well within the range awarded by courts in this Circuit and courts throughout the country").

For the foregoing reasons, the parties request the Court find the settlement agreement to fairly compromise Plaintiffs' claim under the Fair Labor Standards Act and approve the settlement agreement as fair and reasonable and dismiss this action with prejudice against Defendants.

Respectfully submitted,

*John M. Gurrieri*

John M. Gurrieri

Enclosures (3)